UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
DAVID CALTON individually and on behalf
of himself and all others similarly situated,

                                    Docket No.: 10-CV-2117
                                    (LMM) (DCF)

                            Plaintiff,

            -against-

PRESSLER & PRESSLER, LLP,
PALISADES COLLECTION, LLC,
and JP MORGAN CHASE & CO.,

                            Defendants.
--------------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JP MORGAN CHASE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT


**HERZFELD & RUBIN, P.C.**
**Attorneys At Law**
**125 Broad Street**
**New York, New York 10004**

# TABLE OF CONTENTS

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS JP MORGAN CHASE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** .................................................................... 1

**STATEMENT OF FACTS** ............................................................................ 2

**PRELIMINARY STATEMENT** .................................................................. 2

**ARGUMENT** ............................................................................................... 3

A. Standard of Review ................................................................................. 3

B. Plaintiff Has Stated A Claim Based On Chase's Restraint Of Funds In Amounts Below The Minimum Legal Threshold .............................................. 4

C. Plaintiff Has Stated A Claim Based On Chase's Imposition Of Restraints On Out-Of StateBank Accounts ................................................................ 6

   1. Plaintiff's Michigan Accounts Were Wrongfully Restrained ...................... 6

   2. Koehler Has No Relevance To The Facts Of The Present Case ................... 8

   3. The Restraint On Out-Of-State Accounts Is Not Excused By Chase's Customer Agreement ............................................................................ 12

D. Chase Violated CPLR 5222(j) By Charging Plaintiff A Fee In Connection With Chase's Wrongful Restraint Of Plaintiff's Funds ............................... 13

E. There Is No Basis For Dismissal Of Plaintiffs' Claims Under 349 Of The General Business Law .......................................................................... 17

F. Chase's Accord And Satisfaction And Mootness Defenses Are Without Merit ....................................................................................................... 21

**CONCLUSION** ......................................................................................... 22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
DAVID CALTON individually and on behalf
of himself and all others similarly situated,

Plaintiff,

-against-

PRESSLER & PRESSLER, LLP,
PALISADES COLLECTION, LLC,
and JP MORGAN CHASE & CO.,

Defendants.
--------------------------------------------------------------X

Docket No.: 10-CV-2117
(LMM) (DCF)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT JP MORGAN CHASE'S MOTION
## TO DISMISS PLAINTIFF'S COMPLAINT

Plaintiff has brought this putative class action lawsuit on behalf of himself

and all others similarly situated, to obtain redress for defendants' wrongful acts in

restraining bank accounts owned by plaintiff.  Plaintiff alleges violations of the Fair Debt

Collection Practices Act, 15 U.S.C. §1692a *et seq.* ("FDCPA") by defendants Pressler &

Pressler, LLP ("Pressler") and Palisades Collection, LLC ("Palisades").  Plaintiff also

asserts that defendant JP Morgan Chase & Co. violated New York law in acting upon

the restraining notice served by the other defendants.

JP Morgan Chase Bank, N.A., asserting that it was incorrectly sued here

as JP Morgan Chase & Co., has moved to dismiss the Complaint for failure to state a

claim upon which relief can be granted or, in the alternative, for summary judgment.  A

copy of the Complaint is annexed as Exhibit C to the Declaration of Stephen Ellman in

support of the motion.  This memorandum is submitted in opposition to the motion.  The

term "Chase" is used herein to refer to whichever of the Chase entities committed the acts of which plaintiff complains.

## STATEMENT OF FACTS

As is alleged in the Complaint, plaintiff is an individual who resides in Michigan. Defendants Palisades and Pressler are engaged in the business of collecting debts due to others, and are "debt collectors" as defined in the FDCPA. Defendant Chase asserts that it is a national bank association organized under the laws of the United States.

On or about February 18, 2010, Chase was served with a restraining notice addressed to its Louisiana banking facility. The restraining notice was served by Pressler, a law firm, on behalf of Palisades. See Exhibit E to Chase's moving papers. The restraining notice was served in connection with efforts to enforce a default judgment against plaintiff obtained in an action brought by Palisades, with the assistance of Pressler. The action was brought in Civil Court of the City of New York, Index #48954-05. After being served, Chase evidently froze all of plaintiff's accounts, wherever situated. When the notice was received by Chase, plaintiff had two small Chase accounts in Michigan and two in New York. The accounts restrained in New York held $303.85 and $73.74, respectively. The accounts in Michigan had $1,596.43 and $91.46 in them.

## PRELIMINARY STATEMENT

By its motion papers, Chase demonstrates a mistaken understanding as to the requirements of §5222 of the New York Civil Practice Law and Rules ("CPLR"), which governs restraining notices served in connection with judgment enforcement

efforts. First, although CPLR 5222(i) plainly proscribes a bank served with a restraining notice from restraining amounts in a debtor's account below a $1,740 threshold, Chase argues that it was entitled to restrain <u>all</u> of the $2,010 in plaintiff's accounts with Chase. In addition, Chase claims, contrary to New York law, that it is proper to comply with notices served on out-of-state bank depositories, and to freeze assets located out of New York State. For this argument, it relies exclusively on a recent decision of the New York Court of Appeals, <u>Koehler v Bank of Bermuda, Ltd.</u>, 12 N.Y.3d 533 (2009). As is discussed <u>infra</u>, Koehler provides no basis for Chase's position – it involved a turnover action which had been commenced pursuant to 5225(b) against a bank which conceded that personal jurisdiction had been acquired over it. Therefore, the Court was able to order the turnover of assets because the custodian of those assets was appearing before it. Here, there was no such proceeding and no such appearance. Chase errs again in arguing that its charging of a fee to plaintiff in connection with the wrongfully imposed restraining notice, in violation of CPLR 5222(j), is excused because that statute is pre-empted by the National Bank Act. Chase also falsely asserts that plaintiff was not harmed by Chase's acts, despite undisputed evidence to the contrary.

## ARGUMENT

### A.    Standard of Review

When deciding a Rule 12(b)(6) motion a court must "accept all factual allegations in the Complaint and draw all reasonable inferences in Plaintiff's favor." <u>Ruotolo v. City of New York</u>, 514 F.3d 184, 188 (2d Circuit 2008). The "factual allegations must be sufficient to raise a right to relief above the speculative level," as

opposed to mere "labels and conclusions." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S.

544, (2007). As shown below, the Complaint here meets this standard.

**B.    Plaintiff Has Stated A Claim Based On
        Chase's Restraint Of Funds In Amounts
        Below The Minimum Legal Threshold**

> CPLR 5222(i) provides as follows:
>
> (i) Effect of restraint on judgment debtor's banking institution account.  A restraining notice issued pursuant to this section <u>shall not apply to any amount equal to or less than</u> the greater of two hundred forty times the federal minimum hourly wages prescribed in the Fair Labor Standards Act of 1938 or two hundred forty times the state minimum hourly wage prescribed in section six hundred fifty-two of the labor law ... except such part thereof as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his or her dependents.  This amount shall be equal to seventeen hundred sixteen dollars on the effective date of this subdivision, and <u>shall rise to seventeen hundred forty dollars on July twenty-fourth, two thousand nine</u> ....  Where a judgment debtor's account contains an amount equal to or less than ninety percent of the greater of two hundred forty times the federal minimum hourly wage prescribed in the Fair Labor Standards Act of 1938 or two hundred forty times the state minimum hourly wages prescribed in section six hundred fifty-two of the labor law ... <u>the account shall not be restrained</u> and the restraining notice shall be deemed void, except as to those funds that a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his or her dependents.

(emphasis added)

As is alleged in the complaint, and as conceded by Chase, <u>none</u> of the

four accounts affected by the restraining notice at issue here contained as much as

$1,740, yet <u>all</u> of the funds in all of those accounts were restrained.

Chase has offered no coherent defense to its restraint of sums below the

legal limit.  It commences its failed effort in this regard by asserting that plaintiff's

allegations as to the amount unlawfully restrained are somehow tied to plaintiff's "erroneous assumption that funds outside New York cannot be restrained." See page 14 of Chase's memorandum of law. In fact, there is no connection at all between the two issues. If all of plaintiff's funds had been in New York, or if funds in Michigan could lawfully be impacted by a New York restraining notice, Chase's violation of 5222(i) would nonetheless be indisputable.

Chase's next argument – that the $1,740 limit cannot be applied separately to each of plaintiff's accounts, and that compliance with the statute is established if the amounts in all of plaintiff's accounts are aggregated – is equally spurious. The statutory language, referring to "a judgment debtor's <u>account</u>" and stating that "<u>the account</u> shall not be restrained" (emphasis added), supports the application of the limit on an account-by-account basis. <u>Chase Bank USA, N.A. v. Greene</u>, 2009 N.Y. Misc. Lexis 2077 (N.Y.C. Civil Ct., Queens Co., July 21, 2006), on which Chase relies in this context, does not support a contrary conclusion. The language from that case quoted by Chase (the threshold sum "includes the first [$1,740] in all bank accounts") is followed immediately by a reference to the law's strictures on restraints "when a judgment debtor's ... <u>account</u> contains an amount equal to or less than" the threshold. (emphasis added).

Even assuming, however, that Chase's "aggregation" theory were correct, its conduct would still violate the law. The clear language and purpose of §5222(i) require that a bank served with a restraining notice leave $1,740 available to the judgment debtor. In this case, Chase left <u>zero</u> dollars available to plaintiff.

The remainder of Chase's argument on this issue merely reinforces the conclusion that it violated the law. While a court may lower the threshold to permit restraint of funds unnecessary for the reasonable requirements of the judgment debtor, Chase obtained no such order. In addition, the legislative history on which Chase relies (Chase Memo., pp. 15-16) indicates that the intent was to "protect a baseline amount of every person's earnings" so the account holder would have funds available to cover basic necessities. Chase failed to protect any of the funds in plaintiff's accounts. In the language quoted by Chase from Portfolio Recovery Assoc. LLC v. Calderia, 24 Misc.3d 1165, 1169 (Dist. Ct., Nassau Co. 2009), the court found that the legislature intended to prevent the judgment debtor's funds from being restrained up to the "'last dime.'" Here, Chase did exactly that. In light of the statutory language and the authorities discussed by Chase, its conclusion that it "properly complied with CPLR 5222(i)  when it restrained $1,740 in plaintiff's accounts" is nonsensical.

## C.   Plaintiff Has Stated A Claim Based On Chase's Imposition Of Restraints On Out-of-State Bank Accounts

### 1.   Plaintiff's Michigan Accounts Were Wrongfully Restrained

As indicated above, Chase is wrong in claiming that a restraining notice can be used to restrain property outside of New York. The applicable analysis is reflected in Matter of National Union Fire Insurance Company of Pittsburgh, Pa. v. Advanced Employment Concepts, Inc., 269 A.D.2d 101 (1st Dep't 2000). There, petitioner served a "restraining order" and order of attachment on a branch of a bank in New York. The orders were "issued against two bank accounts maintained by

6

respondent in the State of Florida ...."  The court affirmed the grant of a motion to

vacate the restraints, stating:

> AEC's cross motion to vacate the order of attachment
> affecting bank accounts that it maintains in Florida upon the
> ground that the court was without authority to attach bank
> accounts outside of New York was properly granted.  In
> order to be subject to attachment, property must be within
> the court' s jurisdiction (see, ABKCO Indus. v. Apple Films,
> 39 NY2d 670), and the mere fact that a bank may have a
> branch within New York is insufficient to render accounts
> outside of New York subject to attachment merely by serving
> a New York branch.

(emphasis added)

      The National Union court noted "the long-standing general rule in New

York that each bank is a separate entity and that in order to reach a particular bank

account, the branch of the bank where the account is maintained must be served ...."

The court, citing Limonium Mar. v Mizushima Marinera, 961 F. Supp. 600, 607-08

(S.D.N.Y. 1997), also noted a limited exception to the separate entity rule "where the

restraining notice is served on the bank's main office; the main office and the branches

where the accounts in question are maintained are within the same jurisdiction; and the

bank branches are connected to the main office by high-speed computers and are

under its centralized control ...." (emphasis by the National Union court)  The court

found that this exception did not apply to the case before it, because "the accounts

which the petitioner seeks to attach are not in the same jurisdiction as the New York

office that petitioner served."

      The separate entity rule was recognized and discussed by this Court in

John Wiley & Sons, Inc. v. Supap Kirtsaeng, 2009 U.S. Dist Lexis 86498 (S.D.N.Y.,

September 15, 2009), at *9-16. Wiley's reaffirmation of the validity of this rule after the

decision in <u>Koehler</u>, discussed below, completely undercuts Chase's position here. The court in <u>John Wiley</u> also observed that even if the separate entity rule were inapplicable, the "'fundamental rule'" that for an attachment to be effective "'the <u>res</u> must be within the jurisdiction of the court'" would preclude attachment of accounts in the case before it, where service had been made in New York to restrain funds in a bank branch in California.  The "fundamental rule" language in the preceding sentence was taken from <u>Koehler v. Bank of Bermuda Ltd.</u>, *supra*, 12 N.Y.3d 533 (2009), on which Chase mistakenly relies.

### 2.    Koehler Has No Relevance To The Facts Of The Present Case

As stated, in seeking dismissal of the complaint insofar as it is based on the wrongful restraint of funds in Michigan, Chase relies <u>exclusively</u> on the argument, purportedly supported by <u>Koehler v. Bank of Bermuda Ltd.</u>, *supra*, that funds outside New York can be restrained pursuant to CPLR 5222.  See pp. 8 to 13 of Chase's Memorandum of Law.  <u>Koehler</u> provides no basis for this conclusion.

As this Court stated in <u>John Wiley</u>, *supra*, the rule of <u>Koehler</u> is that "<u>once</u> <u>[a] judgment creditor files an action against defendant bank and the court obtains in</u> <u>personam jurisdiction over this bank</u>, the court in New York can order the turnover of property located outside of the state ...." 2009 U.S. Dist. Lexis 86498 at *10 (emphasis added).  This "rule" is not applicable here.  The court never obtained jurisdiction over Chase and never directed a turnover of money by Chase in the action against plaintiff in which the restraining notice was served.  These differences distinguish <u>Koehler</u>.

In <u>Koehler</u>, the plaintiff had obtained a default judgment against a resident of Bermuda.  The judgment debtor owned stock in a Bermuda corporation.  The share

certificates were in the custody of a bank in Bermuda.  Unlike here, where Pressler and Palisades never commenced a turnover proceeding against Chase, Koehler commenced a proceeding against the bank pursuant to CPLR 5225(b).  That section provides that "[u]pon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money on other personal property in which the judgment debtor has an interest ... the court shall require such person to pay the money or [if the money is insufficient], to deliver any personal property ... to a designated sheriff."  The critical distinction between Koehler and the case at bar is that Koehler involved a proceeding pursuant to CPLR 5225(b) and the Court's powers over a party which conceded it was subject to the Court's jurisdiction.  CPLR 5225(b) sets forth procedures for a turnover of assets.  It is not the same process as a restraining notice served out of state under CPLR 5222.

Special proceedings such as that for which CPLR 5225(b) provides are governed by CPLR Article 4, which provides for the service of a notice of petition and petition "in the same manner as a summons in an action."  CPLR 403(c).  See RCA Corp. v. Tucker, 696 F.Supp. 845, 850 (E.D.N.Y. 1988): CPLR 5225(b): a proceeding is "commenced by service on the garnishee of a notice of petition and petition ...."  It is by virtue of such service that the court gains jurisdiction over the garnishee.  In Koehler, where service was made upon a New York entity claimed to be an agent for respondent garnishee, the company located in Bermuda, the garnishee initially raised a challenge to personal jurisdiction, but ultimately "consented ... to the personal jurisdiction of the court ...." 12 N.Y.3d at 536.

9

The issue in Koehler was whether the garnishee, which had conceded that the New York court had jurisdiction over it, could be directed to deliver assets located outside the state into New York. The Court of Appeals, citing National Union, supra, found it "well established that, where personal jurisdiction is lacking, a New York court cannot attach property not within its jurisdiction." The court found it "equally well established," however, that "'having acquired jurisdiction of the person, the court can compel observance of its decrees by proceedings in personam ... with the jurisdiction'" (Id. at 539, quoting from Douglass v. Phoenix Ins. Co., 138 N.Y. 209, 218 (1893). (emphasis added)  Because Chase was not sued, the New York court never acquired in personam jurisdiction over it.

The Koehler court noted lower court cases in which judgment debtors had been compelled to turn over out-of-state assets pursuant to a motion made under CPLR 5222(a), because the court already had personal jurisdiction over defendant. See, e.g., Starbare II Partners, L.P. v. Sloan, 216 A.D.2d 238 (1st Dep't 1995): "[s]ince the IAS Court had personal jurisdiction over defendant and judgment debtor," it was entitled under 5222(a) to order him to turn over property located outside the state. The Koehler court explained that 5225(b) required a special proceeding against the garnishee, rather than a simple motion, because the garnishee, "not being a party to the main action, has to be independently subjected to the court's jurisdiction." Id. at 541.  Only after this has been accomplished, by service of process upon the garnishee, can delivery of property held outside the state be compelled. Here, that step was never taken.

In the present case, Chase was not a party to the underlying action against plaintiff, and neither of the other defendants commenced any separate action or

10

proceeding against Chase. The fundamental rule that out-of-state property cannot be restrained absent personal jurisdiction over the garnishee thus applies in full force in the present case, and Koehler provides no defense to plaintiff's claims.

In arguing that Koehler supports the effectiveness of a restraining notice with respect to funds in an out-of-state bank account, Chase appears to argue that the Civil Court of the City of New York had personal jurisdiction over Chase in the action in which a judgment was obtained against plaintiff by virtue of Chase's "ubiquitous presence" in New York. The equation of service of a restraining notice with the service of a process necessary to bring an entity into an action or proceeding as a party is fallacious. In National Union, supra, a restraining order had been served on a New York branch of a company with bank accounts in Florida. The Koehler court expressly recognized the validity of National Union, observing that it was a case "where personal jurisdiction is lacking ...." 12 N.Y.3d at 538-39 (emphasis added). Chase has cited no authority holding that a court in which a judgment is entered obtains personal jurisdiction over a garnishee when the judgment creditor serves the garnishee with a restraining notice. The rule that "[r]estraining notices do not reach property in other jurisdictions," articulated in Gryphon Domestic VI, LLC v. App Int'l Fin. Co., D.V., 2005 N.Y. Slip Op. 50481U (Sup. Ct. N.Y. Co. 2005), was not abrogated by Koehler.

Chase's attempt to distinguish this court's decision in John Wiley & Sons, supra, as involving a pre-judgment order of attachment, is also unavailing. The language from that case quoted by Chase reinforces plaintiff's position here. As noted by Chase, the Wiley court observed that "once [a] judgment creditor files an action against a defendant bank and the court obtains in personam jurisdiction over the bank,"

11

the turnover of out-out-state property can be ordered (emphasis added).  The judgment

creditor here did <u>not</u> file an action against Chase.  The fact that Chase has not objected

to plaintiff's assertion of personal jurisdiction in <u>this</u> action, noted by Chase at page 11

of its memorandum, obviously has no bearing on the legal effect of the restraining order

served in the New York City Civil Court proceeding.

**3.    The Restraint On Out-Of-State
        Accounts Is Not Excused By
        <u>Chase's Customer Agreement</u>**

As a "fall-back" argument following its erroneous contention based on its

misreading of Koehler, Chase argues that its restraint on plaintiffs' Michigan accounts

was justified by its customer agreement with plaintiff.  The provision of the agreement

on which Chase relies reads as follows:

> If any legal process, including without limitation any
> subpoena, writ of garnishment, execution of any levy, is
> served on us relating to you or your account, we are
> authorized to comply with the legal process, and are not
> required to determine whether the court issuing the legal
> process had jurisdiction over you or over the account or
> otherwise had the authority to issue the legal process.

In acknowledging that Chase is "authorized to comply with legal process,"

plaintiff did <u>not</u> agree that his Michigan accounts could be restrained if Chase was

served with a restraining notice pursuant to CPLR §5222, in aid of enforcement of a

New York judgment.  Chase was <u>not</u> complying with legal processs when it restrained

the Michigan accounts.  As shown above, under New York law a restraining notice is

nullity with respect to out-of-state assets.

The portion of the above-quoted language in which Chase purports to

disclaim responsibility for determining whether or not its acts are lawful cannot alter the

fact that in this case, they were not.  Parties cannot by agreement change the law. Moreover, if the disclaimer language were deemed to shield Chase from liability for going beyond what legal process requires or permits, it would be inconsistent with Chase's representation that it would <u>comply</u> with such process.  Any ambiguity in this regard should be constituted against Chase, which prepared the agreement.  <u>Broder v. Cablevision Systems Corp.</u>, 329 F.Supp. 2d 551, 556 (S.D.N.Y. 2004).

An additional ground for rejecting Chase's argument that the contract with plaintiff leaves Chase free to ignore the law lies in the rule that "[c]ourts will not enforce provisions [of contracts] that are contrary to public policy."  <u>Drutman Realty Co. Ltd Partnership v. Jindo Corp.</u>, F. Supp. 1093, 1101 (S.D.N.Y. 1979).  New York state's public policy "'is to be ascertained by reference to the [states] laws and legal precedents ....'"  <u>Kraut v. Morgan & Brother Manhattan Storage Co., Inc.</u>, 38 N.Y.2d 445, 451 (1976), quoting from <u>Muschany v. United States</u>, 349 U.S. 49, 66 (1945).  New York's public policy, established by CPLR 5222 and decisional law, is that the device of a restraining notice can have no effect on property beyond New York's borders.  If the agreement on which Chase relies could be construed to allow Chase to give the restraining notice such effect, it would to that extent be unenforcible.

**D.    Chase Violated CPLR 5222(j) By Charging Plaintiff A Fee In Connection With Chase's Wrongful Restraint Of Plaintiff's Funds.**

CPLR 5222(j) provides as follows:

(j)  Fee for banking institution's costs in processing a restraining notice for an account.  In the event that a banking institution served with a restraining notice <u>cannot lawfully restrain a judgment debtor's banking institution account, or a restraint is placed on the judgment debtor's account in violation of any section of this chapter</u>, the banking institution

> shall charge no fee to the judgment debtor regardless of any
> terms of agreement, or schedule of fees, or other contract
> between the judgment debtor and the banking institution.

(emphasis added)

Plaintiff alleges, in the Third Cause of Action in his complaint, that Chase violated the foregoing statute by charging plaintiff a $125 fee, notwithstanding the unlawful restraint on funds below the legal threshold, in violation of §5222(i), and the unlawful restraints on plaintiff's Michigan bank accounts.

In response, Chase contends that its account agreement permits it to charge a fee for compliance with a restraining notice. Chase Mem., p. 18. As Chase's quotation from the agreement shows, however, such fees are permitted only if "not prohibited by applicable law ...." (emphasis added). Here, applicable law, i.e., §5222(j), establishes such a prohibition. In addition, the agreement permits a fee to be charged only in connection with "expenses incurred" by Chase. Chase has not submitted any evidence that it incurred any expenses.

Chase also argues that a regulation appearing at 12 C.F.R. §7.4002(b)(21) promulgated by the Comptroller of the Currency under the National Bank Act, 12 U.S.C. §1, et seq., permits it to charge the fee at issue, and that the federal statute and regulation preempt CPLR §5222(j). The preemption doctrine does not, however, permit Chase to obtain compensation from a customer based on conduct which violates admittedly applicable state law.

The regulation on which Chase relies provides that the "establishment of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion ...." In arguing that the regulation preempts New York prohibition on charging fees for unlawful restraints,

14

Chase relies on Monroe Retail, Inc. v. RBS Citizens, N.A., 589 F.3d 274 (6th Cir. 2009).

There, certain garnisher-creditors filed a class action based on Ohio statutes providing

that garnishees, including banks, become liable to garnishers at the time the garnishees

are served with the garnishment order. The plaintiffs challenged defendant banks'

practice of collecting service fees, in cases where the debtor's funds at the bank were

insufficient to satisfy both the fee and the garnishment order, by extracting the fees from

the debtor's funds before releasing the remaining funds to the garnishers. The

garnishers claimed that this practice amounted to a conversion of funds to which the

garnishers were entitled.

    The court, relying on the regulations concerning fees cited by Chase,

found that plaintiff's claims were preempted by federal law. Quoting from Walters v.

Wachovia Bank, N.A., 550 U.S. 1, 12 (2007), the court in Monroe observed that "when

state laws 'significantly impair the exercise of authority, enumerated or incidental under

the NBA,' the state laws 'must give way.'" The court noted 12 C.F.R. §7.4007(c)(4),

which provides that state laws concerning "[r]ights to collect debts" are not preempted

"to the extent they only incidentally affect the exercise of national banks' deposit taking

powers ...." The court found, however, that the Ohio garnishment laws, "by preventing

the banks from exacting a fee for processing the garnishment orders through freezing

the accounts," significantly interfered with the banks' rights to establish fees under 12

C.F.R. §7.4002, 589 F.3d at 283.

    The effect of CPLR 5222(j) is dramatically different from the effect of the

Ohio law at issue in Monroe. The New York statute creates no impediment at all to a

bank's right to establish and charge fees when it responds properly to a restraining

notice.  Fees are prohibited only when the bank's conduct serving as the purported basis for the fee violates a judgment debtor's rights under other provisions of state law. Chase expressly recognized such a limitation on its right to collect fees in its agreements with its depositors, by providing that charges "for compliance with legal process" can be levied only if "not prohibited by applicable law ...." (emphasis added) In this case, Chase did not "comply with legal process."  It went beyond what it was required to do, and even what it was permitted to do, by restraining the first $1740 in plaintiff's funds, and by restraining the funds in Michigan.  In doing so it acted in a manner which was prohibited by applicable law.  Chase concedes that it is subject to the $1740 restriction on restraint imposed by CPLR 5222(i).  It should not be able to hide behind the preemption doctrine by charging fees for acts which were prohibited by that statute.

In re: Checking Account Overdraft Litigation, 2010 U.S. Dist.Lexis 22761 (S.D.Fla., March 10, 2010) provides a useful analogy.  There, plaintiffs raised challenges under state law to national banks' practices in posting overdrafts in a high-to-low order in order to maximize the number of overdraft fees they could collect.  The court rejected defendants' preemption argument, stating that plaintiffs were not claiming that the banks had no right to charge overdraft fees, but were instead attacking the allegedly "unlawful manner" in which the fee programs were implemented. Id. at *39. The same is true in this case, where New York law prohibits the imposition of fees for performing unlawful acts.

Gutierrez v. Wells Fargo & Co., 2010 U.S. Dist.Lexis 29082 (N.D.Cal., March 26, 2010), like In re: Checking Account Overdraft Litigation, involved the

sequencing of overdraft transactions, in order to maximize the number of overdraft fees. In reaching the same result as the <u>Checking Account Overdraft Litigation</u> court (no preemption), the court in Gutierrez distinguished Monroe, supra, as involving a dispute between banks and creditors rather than, as in the case before it, a dispute between a bank and its depositor customers.  The focus of CPLR 5222(i) on consumer protection, as highlighted by the legislative history discussed by Chase (see Exhibit D to Chase's papers) renders the charging of a fee based on a violation of that statute more egregious.

As the Supreme Court stated in <u>Wyeth v. Levine</u>, 129 S. Ct. 1287 (2009), in every preemption case "'the purpose of Congress is the ultimate touchstone' …." (quoting from <u>Medtronic, Inc. v. Lehr</u>, 518 U.S. 470, 485 (1996)).  Chase has failed to present any evidence or authority suggesting that in passing the National Bank Act, under which national banks' authority to charge fees is established, Congress intended that such banks could obtain compensation for conduct which violated the rights of consumers under state law.  The argument that such conduct is protected by federal policy regarding national banks should be rejected.

**E.    There Is No Basis For Dismissal Of Plaintiffs' Claims Under §349 of the General Business Law**

New York General Business Law 349 provides in pertinent part:

§ 349.  Deceptive acts and practices unlawful

(a)    Deceptive acts or practices in the conduct of any business, trade or commerce on in the furnishing of any service in this state are hereby declared unlawful.

\*    \*    \*

(g)    This section shall apply to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this state ....

(h)    In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount no to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section.  The court may award reasonable attorney's fees to a prevailing plaintiff.

Plaintiff alleges that Chase's restraint of funds beyond the legal threshold, with restraint of funds in bank accounts outside New York, and its charging of a fee in connection with these improper actions, each constituted a violation of §349.  Chase, citing Stutman v. Chemical Bank, 95 N.Y.2d 24 (2000), asserts that to state a claim for such a violation a plaintiff must allege that defendant's actions (a) were misleading in a material way; (b) were directed at consumers; and (c) caused injury to plaintiff.  Chase does not challenge plaintiff's allegations of injury, but asserts that he has not alleged misleading acts or acts which are directed at consumers in general.  Plaintiff has, however, met these standards.

Plaintiff has alleged that Chase's actions were materially misleading.  In Littlefield v. Goldome Bank, 142 A.D.2d 978, 979 (4th Dep't 1988), defendants had imposed a quarterly fee on a bank account plaintiff had opened for his children.  The fee was charged because the accounts had a balance below $250.  Plaintiff claimed the charge was imposed without notice or proper authority.  The court found that allegations of the foregoing facts stated a cause of action "for deceptive business practices" under General Business Law § 349.  The court in Negrin v. Northwest Mortgage, Inc., 263

18

A.D.2d 39, 50 (2d Dep't 1999), relying in part on Littlefield, supra, stated that "[a]llegations of a bank's unilateral imposition of illegal and/or unwarranted fees upon its customers states [sic] a valid claim for consumer fraud" under § 349.

In Kidd v. Delta Funding Corp., 2000 N.Y.Misc. Lexis 29 (Sup.Ct. N.Y.Co. 2000), defendant mortgage banker charged a "processing fee" which did not comply with applicable administrative regulations. The court cited both Littlefield and Negrin in concluding that defendant's conduct in imposing and collecting the illegal fees, and "impliedly representing that it was entitled to such fees," constituted deceptive conduct within the scope of GBL § 349." In the present case, Chase not only implicitly represented that it was entitled to charge a fee, but also implicitly represented that it was entitled to restrain the first $1740 in funds in plaintiff's accounts, and that it was entitled to restrain plaintiff's funds in Michigan. We note that an intent to mislead is not required to establish a § 349 violation. Oswego Laborer's Local 214 Pension Plan v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26 (1995).

Plaintiff has also alleged that Chase's conduct was directed at consumers. In Oswego Laborer's Local 214 Pension Plan, supra, defendant had imposed a ceiling on the balance in savings accounts opened by plaintiff on which interest was paid, in violation of a federal regulation. The court found that the "consumer-directed" test of § 349 had been met, observing that defendant had dealt with plaintiff as with "any customer entering the bank to open a savings account," that the account openings were not "unique to these two parties," nor were they "private in nature" or a 'single-shot transaction ....'" The court concluded that defendant's acts were "consumer-oriented in the sense that they potentially affect similarly situated customers." Plaintiff here, in his

19

class action allegations, has expressly alleged that Chase's actions affected similarly situated consumers.

Chase's assertions that plaintiff's §349 claim is preempted by the National Bank Act and the regulation regarding fees, and by the provisions of §349(d), must also be rejected. The invalidity of the preemption argument with respect to the violations of CPLR 5222(j) has already been established. The argument against preemption is even stronger where GBL §349, New York's consumer protection law, is involved. See Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc., 178 F. Supp. 2d 198, 262 (E.D.N.Y. 2001): "[b]ecause plaintiff's claims involve regulations that lie at the heart of the states' traditional police powers - - consumer protection - - plaintiff's claims are not to be superceded by … Federal Act unless that [is] the clear and manifest purpose of Congress.'" (quoting from Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 5 – (2001).

Nor does §349(d) provide a haven for Chase. That statute provides that if an act or practice challenged under §349 "complies with the rules or regulations of any official department … or agency of the United States," such compliance shall be a "complete defense." The preemption analysis applies to the claimed §349(d) defense as well. See In re Methyl Tertiary Butyl Ether Products Liability Litigation, 175 F.Supp. 2d 593, 614, 632 (S.D.N.Y. 2001), where this Court explained that "[c]onflict preemption" (the type of preemption on which Chase relies here) requires either that compliance with both state and federal requirements would be impossible or that state law "would provide an obstacle to the achievement of the full purposes and objectives of Congress." After finding that plaintiff's tort claims were not preempted by the federal

Clean Air Act, the court rejected a proffered §349(d) defense "for the reasons stated in the preemption discussion …."

## F.   Chase's Accord And Satisfaction And Mootness Defenses are without Merit

Chase claims that because "plaintiff's underlying claim has been resolved" by the payment of $350 to plaintiff's judgment creditor Palisades, plaintiff's action against Chase is barred by the doctrine of accord and satisfaction.  Chases' error in this regard is demonstrated by the case it cites for this proposition, Profex Inc. v. Town of Fishkill, 65 A.D.3d 678 (2d Dep't 2009).  The Court there stated that the party asserting the affirmative defense of accord and satisfaction must establish that there was a disputed unliquidated claim between the parties which they mutually resolved through a new contract …." (emphasis added).  In the present case, plaintiff's settlement of Palisades' claim against plaintiff did not involve in any way the claims by plaintiff against defendants here, including plaintiff's claim against Chase.  The claim that Chase wrongfully took $125 of plaintiff's money was obviously not resolved by plaintiff's agreement with Palisades.  Nor was plaintiff's claim that Chase caused him injury through the wrongful restraint of his funds.  That injury is alleged to have included the payment made by plaintiff to Palisades Complaint.  The fact that the restraints were lifted after the injury occurred does not negate the allegation of injury through Chase's violation of the law.

For the same reasons, the claims against Chase are not moot in any way.  Chase asserts that plaintiff has "already received the affirmative relief provided by CPLR 5222(i)," yet CPLR 5222(i) does not provide for any affirmative relief.  Rather, it contains a prohibition on restraints which was violated by Chase.  Plaintiff does not seek

21

relief in the form of lifting the restraints.  His claims are based on damages caused by the restraints before they were lifted, and caused by the "fee" taken by Chase when it wrongfully put the restraints in place.  Plaintiff's settlement with Palisade's does not diminish the viability of those claims in any way.

### CONCLUSION

Chase's motion to dismiss the complaint should be denied.

Dated:  New York, New York
        June 18, 2010

                                   HERZFELD & RUBIN, P.C.

                        By: _____
                                   Charles A. Crum (CC9919)
                                   Attorneys for Plaintiff
                                   125 Broad Street, 12th Floor
                                   New York, New York 10004
                                   212-471-8500